[Civ. No. 23170. First Dist., Div. Two. Apr. 18, 1967.]

STOLTE, INC., Cross-complainant and Appellant, v. SEA-
BOARD SURETY COMPANY et al., Cross-defendants
and Respondents.

170

Russ & Benson and Wilbur J. Russ for Cross-complainant and Appellant.

Worthington & Worthington, Leonard A. Worthington and Wm. F. Worthington, Jr., for Cross-defendants and Respondents.

TAYLOR, J.—This appeal from a declaratory judgment in favor of the insurer as subrogee of the lessor, presents the novel question of whether the insurer is required to provide coverage and defense to the lessee as an "additional insured" under the comprehensive liability policy issued to the lessor, where the lessee has agreed in the lease to hold the lessor harmless from all liability resulting from the use of the leased equipment.

The appeal is on an agreed statement that sets forth the following facts: In 1957, plaintiff, Rosendahl Corporation (hereafter Rosendahl), a commercial leasing company, leased to defendant, Stolte, Inc. (hereafter Stolte), a truck-crane to be used by Stolte on a construction job in Richmond, California. The crane lease agreement (hereafter lease) signed by Stolte provided that: "The Lessee expressly agrees to indemnify and save Lessor harmless from and against all costs, losses and claims for death or injury to persons, including employees of the Lessor, and loss, damage or injury to property including leased equipment caused or resulting, directly or indirectly, from the work covered by this order, or done by said equipment, it being expressly agreed that the leased equipment and the employees furnished therewith are under

the exclusive jurisdiction, control and supervision of the Lessee.''

On August 27, 1957, the crane leased to Stolte was accompanied by an operator and oiler, Haugh and Anderson, both employees of Rosendahl. While operated by them under the control and supervision of Stolte, the crane came in contact with live electric wires whose current passed through it and injured two of Stolte's employees, Larks and Sanders.

Larks and Sanders filed actions for negligence against Haugh and Anderson, and Rosendahl on the principle of *respondeat superior.* The issues of negligence, damages, employment of Haugh and Anderson, and *respondeat superior* were submitted to the jury and verdicts rendered against Rosendahl. In October 1959 Seaboard Surety Company (hereafter Seaboard), Rosendahl's liability insurance carrier, satisfied the Larks'₄ and Sanders' judgments, and thereafter, as real party in interest, filed this action in Rosendahl's name against Stolte for reimbursement for the judgments paid to Larks and Sanders. The complaint was based on implied indemnity and the express hold harmless agreement and alleged Stolte's negligence in controlling the operation of the crane under the exclusive supervision of Haugh and Anderson, as well as Stolte's active negligence in failing to comply with applicable building codes and safety orders. Stolte's answer denied any negligence and its cross-complaint for declaratory relief averred that as a permissive user of the crane, Stolte was entitled to coverage and defense by Seaboard as an ''additional insured'' under the policy issued to Rosendahl.

The issue raised by the cross-complaint was tried by the court without a jury on the above facts and documents. The parties stipulated to the existence and validity of the lease solely for the purpose of this declaratory action and that the leased crane was an ''owned vehicle'' under the comprehensive liability policy issued by Seaboard to Rosendahl, which Stolte was using at all times with the permission and consent of Rosendahl.

The court found that: (1) Stolte was not entitled to coverage under the policy by reason of the hold harmless agreement between Rosendahl and Stolte; (2) the definition of insured and certain exclusions of the policy did not preclude Stolte from any coverage otherwise available; (3) Seaboard was bound by the judgments in the Larks and Sanders action as to Rosendahl's employment of Haugh and Anderson and *respondeat superior*; and (4) Stolte was not entitled to be de-

fended by Seaboard by reason of no coverage under the policy.

■ Thus, the only question presented on this appeal by Stolte from the adverse judgment on its cross-complaint is whether the trial court properly concluded, as a matter of law, that by reason of the hold harmless agreement, Stolte was not entitled to coverage or defense from Seaboard as an additional insured under the policy.[1]

We turn first to the pertinent provisions of the policy labeled ''Contractors' Special Comprehensive Liability Policy, Compensation Automobile and General Liability Form.'' After indicating that Rosendahl is the named insured, the definitions of the policy provide that the unqualified word insured includes, in addition to the named insured under Coverages A and B (Bodily Injury and Automobile Property Damage, respectively), ''any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured . . . .''

Seaboard concedes that Stolte, as a permissive user of the rented vehicle, was covered as an additional insured under the policy. ■ The public policy of this state requires that the insurer of a vehicle extend coverage to all persons using the vehicle with the permission of the owner (*Atlantic Nat. Ins. Co.* v. *Armstrong*, 65 Cal.2d 100, 111 [52 Cal.Rptr. 569, 416 P.2d 801]; *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]; *Pacific Employers Ins. Co.* v. *Maryland Casualty Co.*, 65 Cal.2d 318, 323 at p. 324 [54 Cal.Rptr. 385, 419 P.2d 641]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640]).

Stolte cites *Wildman* and *Ohio Casualty*, as well as section 17153 of the Vehicle Code,[2] as relevant on the question here presented. We cannot agree. ■ The principal purpose of the financial responsibility law in extending coverage to per-

---

[1]In the agreed statement, the parties stipulated as follows: ''The sole issues on this appeal are whether Stolte, Inc. is (1) precluded from coverage as an additional insured under the Seaboard policy by reason of entering into the crane lease agreement (Finding No. 1). (2) not entitled to a defense by Seaboard by reason of no coverage under the policy (Finding No. 6).''

[2]The statute gives an owner against whom there has been a recovery based on imputed negligence, recourse and subrogation rights to the property of the operator.

missive drivers is to afford protection to innocent third persons who may be injured on our highways. The statutes are not designed primarily for the financial protection of the insured and are not determinative on the question of coverage for indemnification where the owner's cause of action is based on a hold harmless agreement executed by the permissive user. (*Atlantic Nat. Ins. Co.* v. *Armstrong, supra*, p. 104).

*Western States Mut. Ins. Co.* v. *Standard Mut. Ins. Co.*, 26 Ill.App.2d 378 [167 N.E.2d 833], *Beck* v. *Renahan*, 46 Misc. 2d 252 [259 N.Y.S.2d 768], *Miller* v. *Kujak*, 4 Wis.2d 80 [90 N.W.2d 137], and other authorities cited by Stolte, are likewise not helpful as they deal only with the question of who is entitled to coverage as an additional insured. None of those cases involved the question presented here, namely, the effect of the hold harmless agreement signed by Stolte on its rights to coverage and defense as an additional insured of Seaboard.

We now turn to the provisions of the policy concerning the coverage provided for Stolte as an additional insured. The pertinent portion of the insuring agreement provides: ''To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the *liability imposed upon him by law,* or assumed by him *under contract as defined herein,* for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons.'' (Italics supplied.)

The definition of ''contract'' found in 3(c) of the ''Conditions'' is set forth in full below.[3] Only the latter portion of the definition relating to ''other written agreement by which the *named insured* assumes liability of others'' is pertinent here. The policy limitation to written agreements of the *named insured* is there clearly expressed.[4] An insurer

---

[3] ''The word 'contract' means (1) a warranty of goods or products, (2) if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement, or (3) any other written agreement by which the named insured assumes liability of others arising out of the operations of the named insured with respect to which insurance is afforded under this policy.''

[4] Stolte relies on *United States Fid. & Guar. Co.* v. *Virgina Eng. Co.* (4 Cir. 1954) 213 F. 2d 109 [63 A.L.R.2d 1114], to argue that public liability policies ordinarily are not confined to, and do not contemplate indemnity only against direct actions by injured persons against the insured, but also losses that he may suffer by reason of being liable to another because of the wrongful act of the insured or his agents. While the principle stated is correct, the *Virginia Engineering* case was an

has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected (*Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 433 [293 P.2d 801, 57 A.L.R.2d 914]). ▮ A court may not rewrite policies of insurance or enlarge the insurer's obligation by judicial construction (*Cook v. Penn Mutual Life Ins. Co.*, 218 Cal.App.2d 194 [32 Cal.Rptr. 400]). The law does not require that the policy coverage of the named insured and that of the additional insured be in all respects identical. It follows that the policy does not provide any coverage for the written agreements of an additional insured that purport to assume the liability of others. In the absence of other considerations, the insurer Seaboard's right to subrogation in the enforcement of the hold harmless agreement cannot be questioned. (*General Acc. Fire & Life Assur. Corp. v. Smith & Oby Co.*, 272 F.2d 581; 274 F.2d 819).

▮ However, the exclusion of the hold harmless agreement from coverage comes about only because of the limited application of the word *contract* in 3(c) of the policy "Conditions" and the policy clearly extends defense and coverage to the additional insured for "liability imposed upon him by law." Rosendahl's action against Stolte is not based on the lessee's hold harmless agreement alone. The complaint also alleges Stolte's active negligence and sets forth a cause of action based on a theory of implied indemnity. This, then, constitutes a "liability imposed upon him by law" and would come under the coverage provided by the policy.

The courts have been persistent in holding the insurer to policy obligations which it has contracted to perform and for which it has been paid its regular premiums. In *Atlantic Nat. Ins. Co. v. Armstrong, supra,* our Supreme Court recently held that the fact that *a named insured lessee* had agreed in the lease with a car rental service to hold the insurer harmless from liability did not deprive the lessee's permissive user of the general public liability insurance coverage extended to the lessee under the lessor's insurance policy and also under the terms of the lease. The court noted that any inconsistency or ambiguity relating to the assumption of liability must be re-

---

action by the named insured, a subcontractor, against his own liability insurer and concerned the hold harmless agreement executed by the subcontractor in favor of the general contractor. Stolte has cited no authorities holding that the coverage provided by the policy to an additional insured must be identical to that provided to the named insured and, in the instant case, the policy, as noted above, expressly distinguishes between the two coverages.

solved against the insurer. In the instant case, we do not have to resolve ambiguities or inconsistencies against the insurer. The coverage is clearly defined in the policy and includes any indemnity imposed by law.

We conclude that since the complaint has alleged a cause of action for which the additional insured is covered under the policy, the insurer must provide Stolte with a defense. Furthermore, the insurer is responsible under the terms of the policy for coverage to Stolte if Stolte is held liable by way of implied indemnity. However, if the cause of action based on implied indemnity were dismissed, the insurer would not then be required to furnish either defense or coverage to Stolte on the hold harmless count standing alone. Additionally, if both causes of action are retained in the complaint and the judgment is based on the hold harmless agreement alone, Stolte would not be covered under the policy and must bear the loss. As indicated above, the hold harmless agreement is a contractual liability voluntarily assumed by Stolte and is not covered under the terms of the policy.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied May 18, 1967, and appellant's petition for a hearing by the Supreme Court was denied June 14, 1967.