[No. C042523. Third Dist. Dec. 10, 2003.]

BLACK DIAMOND ASPHALT, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
JESUS GARCIA ADAMES, Real Party in Interest.

COUNSEL

Law Offices of Brunn & Flynn, Roger S. Matzkind and Michael G. Donovan for Petitioner.

No appearance for Respondent.

Gray, York & Duffy, Barry D. Brown and Thomas Yen for Real Party in Interest.

OPINION

**SCOTLAND, P. J.**—Jesus Garcia Adames, the owner of a truck, leased two trailers from Black Diamond Asphalt, Inc. (Black Diamond), a material supplier and trucking company, and contracted with Black Diamond to transport freight for the company. The contracts required Adames to maintain liability insurance naming Black Diamond as an additional insured, and to indemnify and hold it harmless for any liability arising out of Adames's performance of the contracts.

While hauling freight for Black Diamond, Adames was involved in an accident that killed one person and injured another. After the accident, Adames's liability insurer was declared insolvent, and the California Insurance Guarantee Association (CIGA) undertook the insurer's obligations. (Ins. Code, § 1063 et seq.; further section references are to the Insurance Code unless otherwise specified.)

A personal injury and wrongful death action ensued, alleging Black Diamond was Adames's employer and was responsible for his torts under the doctrine of respondeat superior. Black Diamond, which was self-insured for the costs of defense and the first $1 million in damages, filed a cross-complaint against Adames for indemnity. However, when CIGA provided authorities purporting to show that an indemnity cause of action cannot be maintained against the insured of an insolvent insurer, Black Diamond dismissed the cross-complaint without prejudice.

The litigation positions of the parties then changed. Adames, who had been contesting liability, agreed with the plaintiffs that he would admit liability in return for a promise not to execute a judgment against his personal assets. When it learned of the agreement, Black Diamond sought to vacate its dismissal of the cross-complaint or to file a new cross-complaint for indemnity.

The trial court ruled that, under the laws applicable to CIGA, a cross-complaint for indemnity may not be maintained against the insured of an insolvent insurer.

Black Diamond purports to appeal, claiming its cross-complaint is permissible and that, if the laws applicable to CIGA preclude such a claim, they are unconstitutional to that extent.

The appeal must be dismissed because it is from a nonappealable order. However, exercising our discretion to treat the appeal as a petition for a writ of mandate, we conclude the laws relating to CIGA do not preclude Black Diamond from filing its cross-complaint.

■ As we will explain, CIGA was established to protect members of the public from the insolvency of insurers by spreading throughout the insurance industry a loss suffered by an insured as the result of his insurer's insolvency. CIGA accomplishes this purpose by assessing its member insurers to cover claims obtained against such an insured, while excluding coverage where payment would inure to the benefit of a solvent insurer. Thus, an *insurer* may not file a cross-complaint for indemnity against the insured of an insolvent insurer, except to the extent the claim exceeds the limits of the insured's policy. But the laws applying to CIGA are not intended to protect member insurers against contribution to a loss by shifting the burden of the loss to a member of the public who otherwise has no insurance available to cover the loss. Black Diamond is not an insurer, and its self-insured retention limit is not insurance available to it. Thus, to the extent of its personal liability, Black Diamond is not seeking any payment or benefit on behalf of, or that will inure to, the benefit of an insurer. Consequently, the law does not preclude Black Diamond from seeking indemnification from Adames.

## DISCUSSION

### I

Black Diamond sought, but the trial court denied, leave to assert its claim against Adames by vacating the dismissal of its cross-complaint or by filing a new cross-complaint. The order from which Black Diamond purports to appeal is a nonappealable order and, therefore, the purported appeal must be dismissed. (*Miller v. Stein* (1956) 145 Cal.App.2d 381, 385–386 [302 P.2d 403].)

Nevertheless, we have the discretion to treat the purported appeal as a petition for a writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401 [197 Cal.Rptr. 843, 673 P.2d 720]; *G. E. Hetrick & Associates, Inc. v. Summit Construction & Maintenance Co.* (1992) 11 Cal.App.4th 318, 325 [13 Cal.Rptr.2d 803].) Such discretion should be exercised sparingly and only in unusual circumstances. (*Olson v. Cory, supra*, 35 Cal.3d at p. 401.)

The circumstances in this case warrant such an exercise of discretion. First, the sole reason the trial court refused to allow Black Diamond to pursue its

cross-complaint for indemnity was the court's conclusion that the laws applicable to CIGA preclude such a cross-complaint. This presents a pure question of law.[1] Second, as we will explain in the next portion of this opinion, the trial court was wrong. Black Diamond can seek indemnification from Adames, whether by cross-complaint or in a separate action, and purposes of judicial economy and efficiency militate in favor of a cross-complaint so the rights and liabilities of the parties can be resolved in one proceeding rather than through successive lawsuits. Third, it appears Adames may have been led to believe that by admitting liability in return for a promise the plaintiffs will not execute a judgment against him, he will avoid personal liability for their damages. If so, Adames was misadvised because the laws applicable to CIGA and the dismissal of this purported appeal would not, in themselves, protect him against potentially ruinous personal liability from an indemnity action by Black Diamond. Resolving the issues now would enable Adames to take such steps as he can to protect his personal interests.

This brings us to another procedural issue. On the eve of oral argument in this court, the parties reached a settlement and asked us to "dismiss[] the appeal with prejudice, all parties to bear their own costs." However, they acknowledged at oral argument that this case raises an issue of continuing public interest, which is likely to recur in the future. Thus, in the interest of public policy and clarification of the law, we exercise our discretion to retain jurisdiction and decide the issue on the merits even though the parties' settlement and request for dismissal would normally render the matter moot. (*Burch v. George* (1994) 7 Cal.4th 246, 253, fn. 4 [27 Cal.Rptr.2d 165, 866 P.2d 92]; *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279]; *People v. West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290].) Of course, the settlement means we can provide no meaningful relief by issuing a peremptory writ of mandate. Therefore, having resolved the legal issue presented by treating the purported appeal as a petition for writ of mandate, we will dismiss it as moot. (See *Daly v. Superior Court* (1977) 19 Cal.3d 132, 140, 151 [137 Cal.Rptr. 14, 560 P.2d 1193]; *West Coast Shows, Inc., supra,* 10 Cal.App.3d at pp. 468, 471.)

## II

"CIGA is an involuntary, unincorporated association of insurers, admitted to transact business in California. Each liability insurer, as a condition of its

---

[1] Adames claims the trial court made a factual determination that Black Diamond is not entitled to pursue a claim for indemnity against him. However, the question whether the Insurance Code precludes a claim for indemnification against the insured of an insolvent insurer is a question of law, not fact. Moreover, in determining whether to permit Black Diamond to file a cross-complaint, the trial court was neither in a position to, nor entitled to, resolve the factual basis for Black Diamond's claims.

authority to transact insurance in this state, is required to participate in the association." (*Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn.* (1981) 125 Cal.App.3d 904, 908 [178 Cal.Rptr. 673].) "The statutory duty of CIGA is to provide for each member insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer." (*Ibid.*)

■ CIGA was created to protect members of the public against the insolvency of an insurance company. It was not created to protect insurance companies against the insolvency of fellow members. (*California Union Ins. Co. v. Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [173 Cal.Rptr. 35].) Accordingly, the laws relating to CIGA were crafted so that, in the event of an insurer's insolvency, CIGA would assume the obligations of the insurer up to a statutory maximum, but not where payment would inure to the benefit of a solvent insurer who had insured the risk. (See *California Ins. Guarantee Assn. v. Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624, 629–630 [278 Cal.Rptr. 23]; *Collins-Pine Co. v. Tubbs Cordage Co.* (1990) 221 Cal.App.3d 882, 886–887 [271 Cal.Rptr. 20].)

Section 1063.1 establishes what are, and are not, "covered claims" by CIGA. " 'Covered claims' means the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer." (§ 1063.1, subd. (c)(1).) Section 1063.1, subdivision (g), states a "claimant" includes "any insured making a first party claim or any person instituting a liability claim."[2] Accordingly, the plaintiffs in this action are claimants within the meaning of laws applicable to CIGA since they assert liability claims under third party insurance.

Black Diamond can seek partial equitable indemnity if it is found to have been jointly negligent with Adames. It can seek full indemnity if it is found liable based on respondeat superior. Claims for partial equitable indemnity and for full respondeat superior indemnity are claims for liability arising out of Adames's allegedly negligent use of his vehicle and, thus, are within the coverage of his policy. (See *Stolte, Inc. v. Seaboard Surety Co.* (1967) 250 Cal.App.2d 169, 174–175 [58 Cal.Rptr. 477]; see also *Travelers Ins. Co. v. Industrial Indem. Co.* (1971) 18 Cal.App.3d 628, 632–633 [96 Cal.Rptr. 191].) They meet the basic definition of a covered claim.

---

[2] ■ Thus, coverage under CIGA applies to both first party claims and third party claims. In first party insurance, a person insures himself or his property against loss. In third party insurance, a person insures himself against liability he may incur to others. (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 663 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

And Black Diamond can seek express contractual indemnity pursuant to its agreements with Adames. A claim for express contractual indemnity may or may not be within the coverage of Adames's policy, since liability assumed under contract can be the subject of a policy exclusion. (*Stolte, Inc. v. Seaboard Surety Co., supra,* 250 Cal.App.2d at pp. 174–175; see § 11580.1, subd. (c)(1).) If the policy covers liability assumed by contract, then such a claim meets the basic definition of a covered claim. If the policy excludes such coverage then the claim is not a covered claim, Adames is uninsured against such loss, and the laws relating to CIGA are irrelevant.[3]

After providing the basic definition of a covered claim, section 1063.1 goes on to exclude from coverage those claims that arise under a number of circumstances. In its ruling, the trial court relied in part upon the exclusion in subdivision (c)(5), and the decision in *E.L. White, Inc. v. City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879] (hereafter *E.L. White*).

In *E.L. White,* individuals obtained a judgment against the company and the city. After the company's insurer paid half of the damages, it brought an action in subrogation against the city. The city's excess insurer, which would otherwise have been responsible for partially indemnifying the company's insurer, had become insolvent. At the time of the litigation, the exclusion that is now in subdivision (c)(5) of section 1063.1 was contained in subdivision (c)(4) and provided: " 'Covered claims' shall not include any obligations to insurers, insurance pools, or underwriting associations, except as otherwise provided in this chapter." (Stats. 1981, ch. 1154, § 1, p. 4613.) The exclusion now contained in subdivision (c)(9) of section 1063.1 was then contained in subdivision (c)(7) and excluded from coverage "any claim by any person other than the original claimant under the insurance policy in his own name . . . and shall not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter." (Stats. 1981, ch. 1154, § 1, p. 4613.)

*E.L. White* held that, by plain and unambiguous statutory language, the company's insurer was precluded from pursuing a subrogation claim against CIGA. (*E.L. White, supra,* 138 Cal.App.3d at p. 371.) The court further held that, by necessary implication, the insurer was precluded from maintaining a subrogation action against the city as the insured under a policy of an insolvent insurer. Otherwise, the court reasoned, either CIGA would be required to pay the insurer, in contravention of the express provisions of the law, or the city would be required to pay the insurer, in contravention of the

---

[3] It may be that CIGA's liability will be dependent upon the theory upon which any recovery by Black Diamond is based. (*Stolte, Inc. v. Seaboard Surety Co., supra,* 250 Cal.App.2d at p. 175.) This creates a potential conflict of interest between CIGA and Adames.

legislative purpose of protecting insureds of insolvent insurers. (*Ibid.*; see also *California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra*, 227 Cal.App.3d at p. 633; *Collins-Pine Co. v. Tubbs Cordage Co., supra*, 221 Cal.App.3d at p. 887.)

There are two problems with applying the decision in *E.L. White* and its progeny to this case.

■ First, the statutory provisions, and the judicial interpretation of them, prohibit an *insurer* from seeking payment from CIGA or from the insured when the insured's insurer has become insolvent. This is consistent with section 1063.1, subdivision (c)(9)(i), which excludes from coverage any claim to the extent that it is covered by other insurance available to the claimant or to the insured. But neither the statutory provisions nor the judicial decisions preclude an *uninsured* member of the public from maintaining an action against CIGA or the insured of an insolvent company when any damages paid will not inure to the benefit of an insurer.[4]

■ CIGA was established to protect members of the public from the insolvency of insurers by spreading throughout the industry a loss suffered by an insured as the result of the insolvency of an insurer. (§ 1063.5; *Phoenix Ins. Co. v. United States Fire Ins. Co., supra*, 189 Cal.App.3d at p. 1525.) CIGA was not intended to protect solvent insurers against risks they insured. Accordingly, CIGA accomplishes its purpose by assessing its member insurers for sums to cover claims brought by members of the public for which insurance is otherwise unavailable, while excluding coverage where payment would inure to the benefit of a solvent insurer. (*Phoenix Ins. Co. v. United States Fire Ins. Co., supra*, 189 Cal.App.3d at p. 1525.) ■ CIGA was not intended to protect its member insurers against contribution to a loss by shifting the burden of the loss to a member of the public who otherwise has no insurance available to cover the loss. Indeed, such a result would be contrary to the very purpose for which CIGA was established.

■ Black Diamond has excess insurance only. By virtue of its self-insured retention limit, it is responsible for the costs of defense and the first $1 million in damages awarded against it. Black Diamond is not an insurer, and its retention limit is not insurance available to it. (*O'Sullivan v. Salvation Army* (1978) 85 Cal.App.3d 58, 63–64 [147 Cal.Rptr. 729]; *Glens Falls Ins. Co. v. Consolidated Freightways* (1966) 242 Cal.App.2d 774, 785 [51 Cal.Rptr. 789]; *United States Steel Corp. v. Transport Indem. Co.* (1966) 241 Cal.App.2d 461, 475 [50 Cal.Rptr. 576].) To the extent of its personal

---

[4] CIGA may be sued, either by a member of the public or by an insurance company, to enforce its statutory obligations. (§ 1063, subd. (g); *Phoenix Ins. Co. v. United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1524–1525 [235 Cal.Rptr. 185].)

liability, Black Diamond is not seeking any payment or benefit on behalf of, or that will inure to, the benefit of an insurer.

Second, since the time the decisions in *E.L. White* and its progeny were rendered, the Legislature has spoken on the matter.[5] Section 1063.1, subdivision (c)(5), now states: " 'Covered claims' does not include any obligations to insurers, insurance pools, or underwriting associations, nor their claims for contribution, indemnity, or subrogation, equitable or otherwise, except as otherwise provided in this chapter. [¶] An insurer, insurance pool, or underwriting association may not maintain, in its own name or in the name of its insured, any claim or legal action against the insured of the insolvent insurer for contribution, indemnity or by way of subrogation, except insofar as, and to the extent only, that the claim exceeds the policy limits of the insolvent insurer's policy. In those claims or legal actions, the insured of the insolvent insurer is entitled to a credit or setoff in the amount of the policy limits of the insolvent insurer's policy, or in the amount of the limits remaining, where those limits have been diminished by the payment of other claims."

By this provision, the Legislature adopted in part the holding in *E.L. White*, but only up to the policy limits that the insured obtained for himself. This puts the insured in the same position as though his insurer had not become insolvent, but not in a better position. ■ By the plain and unambiguous terms of the statute, a claim can be maintained against the insured for any sums in excess of the policy limits of his insurance policy regardless whether the claim is by, on behalf of, or will inure to the benefit of an insurer. Any suggestion to the contrary in *E.L. White* or its progeny has been superseded by statute.

The trial court also relied on subdivision (c)(9)(ii) of section 1063.1. As we have noted previously, that provision excludes from CIGA coverage "any claim by any person other than the original claimant under the insurance policy in his or her own name . . . and does not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter."

The trial court concluded that only the insured, Adames, could be the original claimant under the policy. In reaching this conclusion, the court relied on *Baxter Healthcare Corp. v. California Ins. Guarantee Assn.* (2000) 85 Cal.App.4th 306 [102 Cal.Rptr.2d 87]. That decision equated "original claimant" with "original insured" (*id.* at p. 313) but concluded that it was dealing with a first party insurance claim and considered the matter strictly as

---

[5] The Legislature addressed the matter in 1991, effective January 1, 1992, by amendment of what was then section 1063.1, subdivision (c)(4), and is now subdivision (c)(5). (Stats. 1991, ch. 537, § 1, pp. 2565–2566.)

a first party claim. (*Id.* at p. 312.)[6] As we have noted, the laws relating to CIGA recognize both first party insurance and third party insurance. With respect to first party insurance, a claimant is "any insured making a first party claim." In third party insurance, a claimant is "any person instituting a liability claim." (§ 1063.1, subd. (g).) ■ Under the unambiguous language of the statutory scheme, an original claimant can be any person (other than an insurer) instituting a liability claim within the coverage of the policy, provided that he or she does so in his or her own name and not through assignment or by right of subrogation. (§ 1063.1, subds. (c)(1), (c)(9), (g).) *Because Black Diamond wishes to make a liability claim in its own name and for its own benefit, section 1063.1, subdivision (c)(9), does not exclude the claim from coverage and does not preclude Black Diamond from pursuing a claim against Adames for indemnity.*[7]

For these reasons, we conclude that (1) to the extent of its self-insured retention limit, Black Diamond can maintain an action against Adames for indemnity—whether the claim is covered by CIGA will depend upon the theory of any recovery and if such liability is within the coverage of Adames's insurance policy but, either way, Black Diamond may pursue its claim; and (2) Black Diamond can maintain an indemnity action for any sum in excess of the policy limits of Adames's insurance policy—this is so regardless of whether the claim is for sums in excess of Black Diamond's self-insured retention limit so that any recovery would inure to the benefit of its excess insurer.

Accordingly, the trial court erred in concluding that the law precludes Black Diamond from seeking indemnification from Adames and in refusing to allow it to file a cross-complaint for that purpose.

---

[6] In *Baxter Healthcare Corp. v. California Ins. Guarantee Assn., supra,* 85 Cal.App.4th 306, a claim for CIGA coverage was made by a corporation that, through a series of acquisitions and mergers, had become responsible for the liabilities of the original tortfeasor corporation. The court concluded that the case presented a first party insurance claim, and held that the claimant was not an original claimant because it was not the "original insured" and was not within the class of "named insureds" under the policy. (*Id.* at pp. 312–313.)

[7] Adames asserts that Black Diamond is attempting to pursue a subrogation claim. Not so. Black Diamond's claim is for indemnification. "That there is a distinction between subrogation and indemnification needs little discussion." (*Phoenix Ins. Co. v. United States Fire Ins. Co., supra,* 189 Cal.App.3d at p. 1525.) Adames also asserts that section 1063.1, subdivision (c)(9), precludes any claim of a derivative nature, in which he would include claims for indemnity. ■ But this subdivision excludes only claims by an assignee or one claiming by right of subrogation; it does not preclude indemnity claims. Where the Legislature intends to exclude or preclude indemnity claims, it well knows how to do it. (See § 1063.1, subd. (c)(5).)

## DISPOSITION

The purported appeal is dismissed, and the matter is treated as a petition for a writ of mandate. Jurisdiction having been retained and the legal issue having been resolved on the merits, the petition is dismissed as moot. The parties shall bear their own costs.

Sims, J., and Robie, J., concurred.

A petition for a rehearing was denied December 30, 2003, and the petition of real party in interest for review by the Supreme Court was denied March 24, 2004.