Filed 6/24/22

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| MERCURY INSURANCE COMPANY, | ) | No. BV 033574 |
| Plaintiff and Respondent, | ) ) | Spring Street Trial Court |
| v. | ) ) | No. 19STLC05872 |
| ARTIN GOLESTANIAN, et al., | ) ) | |
| Defendant and Appellant. | ) ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Katherine Chilton, Judge. Reversed.

Adrienne D. Cohen and Alexa R. Guzman of Law Offices of Adrienne D. Cohen, for Defendant and Appellant Artin Golestanian.

Lee P. O'Connor of O'Connor, Schmeltzer & O'Connor for Plaintiff and Respondent Mercury Insurance Company.

\* \* \*

## INTRODUCTION

Defendant Artin Golestanian was driving when he inadvertently crashed into four vehicles that were parked on a public street. Plaintiff Mercury Insurance Company provided collision coverage to one of the vehicles that was struck by defendant. After defendant's insurer became insolvent, plaintiff pursued a subrogation claim against defendant to recover the damages paid to its insured. Following a bench trial on stipulated facts, the trial court entered judgment in favor of plaintiff, finding it was authorized to pursue the claim pursuant to Insurance Code section 1063.1, subdivision (c)(5).[1] On appeal, defendant contends plaintiff's claim was barred by section 1063.2, subdivision (c)(2). We agree with defendant and accordingly reverse the judgment.

## BACKGROUND

A complaint filed by plaintiff alleged an action in subrogation against defendant. The cause was adjudicated by bench trial on stipulated facts in conjunction with trial briefs filed by the parties. The relevant stipulated facts follow.

In the morning of July 17, 2016, defendant was driving a 2000 Mercedes when, due to his negligent driving, he lost control of the vehicle and collided into two unoccupied vehicles. One of the unoccupied vehicles was propelled into a 2010 Mercedes owned by Ruzanna Muradyan and insured by plaintiff. The 2010 Mercedes was thereby propelled into a fourth parked vehicle. All four vehicles were legally parked against the curb, and they all sustained damage that was solely caused by defendant's negligent operation of the 2000 Mercedes. As a proximate result of the accident caused by defendant, the 2010 Mercedes required repairs totaling $11,741.73, and Muradyan incurred $1,228.70 in car rental expenses during the period the vehicle was being repaired.

Plaintiff was obligated to and did pay the sum of $11,741.73 for repair of the 2010 Mercedes in addition to $900 towards the car rental expenses incurred by Muradyan, thereby subrogating to plaintiff the right to recover the amounts paid from the persons legally responsible for these damages.

---

[1]Undesignated statutory references are to the Insurance Code.

At the time of the accident, defendant was insured under an automobile liability insurance policy issued by Access General Insurance (Access General), the only liability coverage automobile insurance policy available to defendant, and with a policy limit of $10,000. Access General conducted business in California, but its principal office was in Texas. Following payment of its insured's losses arising from the accident, plaintiff submitted a subrogation claim against Access General. In addition to plaintiff's claim, AAA Insurance Company and Farmers Insurance Company also submitted subrogation claims against defendant for damages sustained to the other vehicles following the accident.

The total amount of the subrogation claims submitted against defendant's policy for the accident exceeded the $10,000 limit of the policy issued by Access General. As a result, the amount of the policy limit apportioned to plaintiff's claim was $1,854.79. On August 11, 2017, Access General offered to plaintiff the sum of $1,854.79 to settle all claims against defendant, which represented "the sole amount of the policy limits remaining available to plaintiff" after Access General's insolvency. Plaintiff rejected the offer.

Access General subsequently declared its insolvency and the company was ordered into liquidation by a federal district court in Texas. At the time of its liquidation, Access General was a member insurer of the California Insurance Guarantee Association (CIGA) and was therefore subject to section 1063 et seq. Plaintiff's subrogation claim against defendant was assigned to CIGA for administration.

The sole issue presented for adjudication by the trial court was whether plaintiff's entire subrogation claim was barred by operation of law. Plaintiff argued that pursuant to section 1063.1, subdivision (c)(5) and *Black Diamond Asphalt, Inc. v. Superior Court* (2003) 114 Cal.App.4th 109 (*Black Diamond*), its claim was authorized except that it was "precluded from recovering the amount that the available insurance policy limits would have paid had Access General not become insolvent ($1,854.79)." Defendant countered that pursuant to section 1063.2, subdivision (c)(2), he was entitled to judgment as a matter of law because the statute "expressly bars all subrogation collision claims against the insured of an insolvent carrier" under the circumstances presented here.

3

A bench trial convened on June 24, 2021. Both parties presented argument and the cause was taken under submission.[2] Later that day, the court entered judgment in favor of plaintiff and against defendant for the principal amount of $10,786.94. In its written statement of decision, the court found the plain language of section 1063.2, subdivision (c)(2) "does not provide one way or another as to claims that exceed the policy limits of an insured's policy with an insolvent insurer." As to the case law, the court found, "*Black Diamond* makes clear that an insurer may maintain an action against the insured of an insolvent insurer for the amount that exceeds the insured's policy limits or the amount of the limit remaining (if other claims have been paid[])." The amount of the award was calculated as $12,641.73 paid to plaintiff's insured, less the $1,854.79 pro rata share that Access Group would have paid to plaintiff pursuant to defendant's liability policy. Defendant filed a timely notice of appeal from the ensuing judgment.

DISCUSSION

This appeal involves the interplay between two conflicting statutes. Defendant maintains the subrogation claim was barred under section 1063.2, subdivision (c)(2), while plaintiff argues the claim was authorized under section 1063.1, subdivision (c)(5). We conclude defendant has the meritorious position.

In applying the usual rules of statutory interpretation, our goal is to ascertain the intent of the Legislature to effectuate the purpose of the applicable statutes. (*Busse v. United PanAm Financial Corp.* (2014) 222 Cal.App.4th 1028, 1037.) The standard of statutory interpretation is: "First look at the text; if it's plain and unambiguous, stop there. If the text is not plain and unambiguous, go to legislative history. If there is evidence of clear legislative intent, implement that intent, and stop there. If there is no clear evidence of intent, use reason,

practicality, and common sense to ascertain what best approximates the legislative intent. [Citations.]" (*Id.* at p. 1038.)

In 1969, the Legislature enacted section 1063 et seq. (commonly known as the Guarantee Act) to provide insurance against any loss arising from the failure of an insolvent

_____

[2]The hearing was electronically recorded but defendant elected to proceed on appeal without a record of the trial court proceedings. (Cal. Rules of Court, rule 8.831(b)(3).)

4

insurer to discharge its obligations under its policies. (*Middleton v. Imperial Insurance Co.* (1983) 34 Cal.3d 134, 137.) All liability insurers, as a condition of their authority to transact insurance in California, are required to participate in CIGA. (*Black Diamond*, *supra*, 114 Cal.App.4th at pp. 115-116.) "'The statutory duty of CIGA is to provide for each member insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer.' [Citation.]" (*Id*. at p. 116.) When a policyholder of an insolvent insurer elects to proceed through CIGA, the insured assigns the claim against the estate of the insolvent insurer to CIGA, which then becomes a creditor of the insolvent insurer and may pursue a timely claim in the insolvency proceeding. (*Middleton v. Imperial Insurance Co.*, *supra*, at p. 137.)

The Guarantee Act charges CIGA with the responsibility to pay and discharge only "covered claims." (§ 1063.2, subd. (a); *California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd*. (1992) 10 Cal.App.4th 988, 994.) Subdivision (c) of section 1063.1 specifies what are and are not "covered claims." As pertinent to this case, "'covered claims'" include the obligations of an insolvent insurer that are imposed by law and within the limitations coverage of an insurance policy of the insolvent insurer, and which were unpaid by the insolvent insurer. (§ 1063.1, subd. (c)(1).) Prior to 1992, a "covered claim" did not include an obligation to insurers or to their claims for indemnity or subrogation, except as otherwise provided in division 1, part 2, chapter 1 of the Insurance Code. (Former § 1063.1, subd. (c)(5)(A).)

In *E.L. White, Inc. v. City of Huntington Beach* (1982) 138 Cal.App.3d 366 (*E.L. White*), the parties were unsuccessful codefendants in a wrongful death action. Plaintiff's insurer paid half the judgment and brought an action against defendant for indemnity.

(*Id*. at p. 369.) After the defendant's insurer became insolvent, CIGA sued claiming that plaintiff's insurer was barred from proceeding with its claim under subdivision (c) of section 1063.1. (*Id*. at pp. 369-370.) The Court of Appeal affirmed the trial court's ruling that plaintiff's insurer was prohibited from pursuing its claim because CIGA was "forbidden from

5

standing in the shoes" of an insolvent insurer based upon the clear and unambiguous statutory language that "covered claims" do not include any subrogation claim. (*Id*. at pp. 369-371.) "[I]f CIGA did not pay [defendant] after it had been ordered to indemnify [plaintiff's insurer], [defendant] would be forced to satisfy the judgment from its own assets. This is equally objectionable, because the overriding purpose of the Legislature in creating CIGA was to protect just such a party as [defendant], the insured of an insolvent insurer." (*Id*. at p. 371.)

In 1991, and following *E.L. White*, the Legislature amended section 1063.1 to specify the indemnity and subrogation rights of an insurer with respect to the insured policyholders of an insolvent insurer. (Sen. Bill No. 1104 (1991-1992 Reg. Sess.) ch. 537, § 1; see *Black Diamond*, *supra*, 114 Cal.App.4th at p. 119 & fn. 5.) Section 1063.1 now provides that "[a]n insurer, . . . may not maintain, in its own name or in the name of its insured, a claim or legal action against the insured of the insolvent insurer . . . by way of subrogation, except insofar as, and to the extent only, that the claim exceeds the policy limits of the insolvent insurer's policy. In those claims or legal actions, the insured of the insolvent insurer is entitled to a credit or setoff in the amount of the policy limits of the insolvent insurer's policy, or in the amount of the limits remaining, when those limits have been diminished by the payment of other claims." (§ 1063.1, subd. (c)(5)(B).)

In *Black Diamond*, the real party in interest leased trailers from plaintiff, which in turn hired the real party to haul materials for plaintiff. (*Black Diamond*, *supra*, 114 Cal.App.4th at p. 113.) While hauling freight, the real party was involved in an accident that killed one person and injured another, his insurer became insolvent, and CIGA undertook the insurer's obligations. (*Ibid*.) Plaintiff was self-insured for a portion of the damages and sought indemnity against the real party. (*Ibid*.) The trial court disallowed the claim on the ground that subdivision (c)(5) of section 1063.1 and *E.L. White* barred an indemnity claim against the insured of an insolvent carrier. (*Id*. at pp. 113-114, 117.) The Court of Appeal deemed the trial court's decision to be erroneous because "the Legislature adopted in part the holding in *E.L. White*, but only up to the policy limits that the insured obtained for himself. This puts the insured in the same position as though his insurer had not become insolvent, but not in a better position. By the plain and unambiguous terms of the statute, a claim can be maintained against

6

the insured for any sums in excess of the policy limits of his insurance policy regardless of whether the claim is by, on behalf of, or will inure to the benefit of an insurer. Any suggestion to the contrary in *E.L. White* or its progeny has been superseded by statute." (*Id*. at p. 119.)

Turning to the case *sub judice*, it is undisputed that Muradyan was insured by and had collision coverage with plaintiff and pursuant to that coverage, plaintiff paid $11,741.73 to Muradyan for damages as a result of defendant's accident, and plaintiff now seeks to recover the loss caused by defendant that was left unpaid after Access General was declared insolvent. It is also undisputed that defendant's total liability coverage for the incident was $10,000, and that Muradyan's claim alone exceeded the liability coverage of defendant's policy without considering the losses claimed by the other claimants. And it is undisputed the sum of $1,854.79 was "the sole amount of the policy limits remaining available to plaintiff from the Access General policy."

The plain language of section 1063.1, subdivision (c)(5)(B) authorized plaintiff to pursue the claim against defendant up to the amount of the policy limits remaining after those limits were diminished by the payment of other claims, and defendant was shielded only for the $1,854.79 sum that was covered by his policy. If section 1063.1 was the only applicable statute, then plaintiff's subrogation claim would be authorized.

Relevant here, however, section 1063.2 provides "[a] claimant having collision coverage on a loss that is covered by the insolvent company's liability policy shall first proceed against his or her collision carrier. That claimant or the collision carrier, if it is a member of the association, does not have the right to sue or continue a suit against the insured of the insolvent insurance company for that collision damage." (§ 1063.2, subd. (c)(2).) The circumstances of this case fall neatly under this provision in that Muradyan held collision coverage on a loss that was covered by defendant's liability policy with Access General; Access General became insolvent; Muradyan first proceeded to recover the loss against plaintiff, her collision carrier; and plaintiff is a member of CIGA.

In isolation, subdivision (c)(2) of section 1063.2 prohibited plaintiff from recovering any sums against defendant caused by the collision, but this provision conflicts with section 1063.1.

7

Given that the plain language of sections 1063.1 and 1063.2 yield conflicting results, we resort to the rules of statutory interpretation.

"The rules we must apply when faced with two irreconcilable statutes are well established. 'If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].' [Citation.] But when these two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enacted statutes have precedence. [Citations.]" (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960-961, citing Code Civ. Proc., § 1859 ["when a general and particular provision are inconsistent, the latter is paramount to the former"]; see also Civ Code, § 3534 ["Particular expressions qualify those which are general"].)

The rule that a specific provision of a statute will control over a general provision is merely a tool for ascertaining and carrying out legislative intent. (*Arbuckle-College City Fire Protection Dist. v. County of Colusa* (2003) 105 Cal.App.4th 1155, 1166.) "[I]t can be presumed that when the Legislature has enacted a specific statute to deal with a particular matter, it would intend the specific statute to control over more general provisions of law that might otherwise apply. [Citation.] But such a presumption may be rebutted by evidence of a contrary legislative intent. [Citations.] The question is always one of legislative intent, and when that intent can be ascertained then general rules of construction, including the general/specific rule, must give way. [Citation.]" (*Ibid.*)

As noted, section 1063.1 provides a series of definitions for the article of the Insurance Code that governs CIGA. Subdivision (c) of the statute generally defines "covered claims" and, in particular, subdivision (c)(5)(B) limits subrogation claims against the insured of an insolvent insurer except to the extent the claim exceeds the policy limits of the insolvent insurer's policy. Section 1063.1 was revised to include the latter provision in 1991. (Sen. Bill No. 1104 (1991-1992 Reg. Sess.) ch. 537, § 1.) This bill was intended, in part, to "[s]pecify indemnity and subrogation rights of an insurer, insurance pool, or underwriting association with respect to an insured of an insolvent insurer, . . ." (*Ibid.*)

Contrarily, section 1063.2 dictates the duties of insurers with respect to covered claims. Subdivision (c)(2) of section 1063.2 provides that when an insured has collision coverage on a loss that is covered by an insolvent company's liability policy, then the collision carrier, if it is a member of CIGA, does not have the right to sue the insured of the insolvent insurance company for that collision damage. This provision of section 1063.2 has been in existence since at least 1987. We presume the Legislature was aware of the existing law on this topic when, in 1991, it amended section 1063.1 by enacting Senate Bill No. 1104. (See *Busse v. United PanAm Financial Corp.*, *supra*, 222 Cal.App.4th at p. 1038.) It is evident that section 1063.2 is the more specific statute, and this determination is not rebutted by evidence of a contrary legislative intent.

We conclude the Legislature, by enacting subdivision (c)(2) of section 1063.2, intended to preclude an insurer in plaintiff's position from pursuing a subrogation claim against an insured like defendant, whose liability insurer was declared insolvent following the covered incident. This result furthers the legislative purpose underlying the Guarantee Act: "CIGA was established to protect members of the public from the insolvency of insurers by spreading throughout the industry a loss suffered by an insured as the result of the insolvency of an insurer. [Citations.] . . . CIGA was *not* intended to protect its member insurers against contribution to a loss by shifting the burden of the loss to a member of the public who otherwise has no insurance available to cover the loss. Indeed, such a result would be contrary to the very purpose for which CIGA was established." (*Black Diamond*, *supra*, 114 Cal.App.4th at p. 118, italics added.)[3]

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions to enter judgment in favor of defendant. (Code Civ. Proc., § 906; *Continental Casualty Co. v. Phoenix Construction Co.* (1956) 46 Cal.2d 423, 440-441.) Defendant shall recover costs on appeal.

---

[3]*Black Diamond* does not alter this conclusion given that its analysis was limited to section 1063.1, whereas section 1063.2 is the more specific statute as applied to this case. Cases are not authority for statutes not considered. (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 127.)

_____

P. McKay P. J.

We concur:

_____        _____

Ricciardulli, J.                  Richardson, J.