[No. B132317. Second Dist., Div. Six. Dec. 7, 2000.]

BAXTER HEALTHCARE CORPORATION et al., Plaintiffs and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant and Respondent.

**COUNSEL**

Shapiro, Mitchell & Dupont, Carl W. Shapiro and Keith A. Meyer for Plaintiffs and Appellants.

Lord, Bissell & Brook, G. Guerry Collins and Charissa Dorian for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—Appellants Baxter Healthcare Corporation and Baxter International, Inc., sought a judicial declaration that the California Insurance Guarantee Association (CIGA) must indemnify them. Appellants paid product liability claims which would have been paid by two insurance carriers, now insolvent, of a predecessor company. We review the trial court's decision de novo (*Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1285 [44 Cal.Rptr.2d 335]; *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35]) and conclude that it properly granted summary judgment to CIGA.

*Facts*

Between 1971 and 1984, American Hospital Supply Company (AHSC) manufactured silicone breast implants. In each of those years, AHSC purchased between $75 million and $135 million of general liability insurance to cover product liability claims. AHSC purchased excess insurance from Transit Casualty Company (Transit) and Midland Insurance Company (Midland) during this period. Named insureds under the Transit and Midland

policies included AHSC and its subsidiary, associated or affiliated companies, or owned and controlled companies "as now or hereafter constituted . . . ."

In March 1984, AHSC sold its breast implant business to Mentor Corporation while retaining responsibility for product liability claims before the closing date of the sale. Baxter Travenol Laboratories, Inc. (Baxter Travenol), later purchased all of the stock of AHSC. On November 25, 1984, AHSC merged into and was absorbed by Baxter Travenol. Baxter Travenol was the surviving corporation after the merger. On the same day, Baxter Travenol signed a document entitled "Assignment and Assumption" that transferred to Baxter Acquisition Sub., Inc. (BASI) substantially all of the assets formerly owned by AHSC. The Assignment and Assumption stated that the transfer would be "[e]ffective simultaneously" with the merger between AHSC and Baxter Travenol. Also on the same date, BASI changed its name to American Hospital Supply Corporation (AHSCORP).

In December 1986, AHSCORP merged into Travenol Laboratories, Inc., which then changed its name to appellant Baxter Healthcare Corporation (BHC). Eight months later, Baxter Travenol changed its name and became Baxter International, Inc. (BII).

Because they had acquired AHSC, BII and BHC were named as defendants in thousands of product liability lawsuits concerning silicone breast implants. In 1994, appellants filed this coverage action against the insurance carriers that sold excess liability insurance policies to AHSC between 1972 and 1984. Prior to the filing of the coverage action, Transit and Midland had been declared insolvent. CIGA was joined as a defendant in their place.

### The Guarantee Act

Every liability insurer, as a condition of its authorization to conduct business in California, is a member of CIGA. (Ins. Code, § 1063.)[1] "The statutory duty of CIGA is to provide for each member insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer." (*Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn.* (1981) 125 Cal.App.3d 904, 908 [178 Cal.Rptr. 673].)

CIGA is not an insurance company and its duties are not co-extensive with the insolvent insurer's obligations under its policies. (*Walters v. California Ins. Guarantee Assn.* (1991) 229 Cal.App.3d 1187, 1192-1993 [281 Cal.Rptr.

[1]All statutory references are to the Insurance Code unless otherwise indicated.

291].) Instead, CIGA "is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections." (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 786 [244 Cal.Rptr. 655, 750 P.2d 297].) Its authority is limited to the payment of "covered claims" as that term is defined by the Guarantee Act. (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 556-557 [70 Cal.Rptr.2d 295].) " 'Covered claims' do not include all claims that would have been covered by the insurer had it not become insolvent." (*California Ins. Guarantee Assn. v. Superior Court* (1998) 64 Cal.App.4th 219, 221-222 [75 Cal.Rptr.2d 461].)

The Guarantee Act, which created CIGA in 1969, requires CIGA to "pay and discharge covered claims and in connection therewith pay for or furnish loss adjustment services and defenses of claimants when required by policy provisions." (§ 1063.2, subd. (a).) The term "covered claims" means, "the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to the date coverage under the policy terminated and prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the workers' compensation law of this state; and (vii) in the case of other classes of insurance if the claimant or insured is a resident of this state at the time of the insured occurrence, or the property from which the claim arises is permanently located in this state." (§ 1063.1, subd. (c)(1).)

Excluded from the definition of "covered claims" is "any claim by any person other than the original claimant under the insurance policy in his or her own name, . . . and . . . any claim asserted by an assignee . . . ." (§ 1063.1, subd. (c)(9)(ii).)

### CIGA'S Motion for Summary Judgment

In its motion for summary judgment CIGA contended, and the trial court agreed, that appellants' claim was excluded from coverage under section 1063.1, subdivision (c)(9)(ii) because they are not the "original claimants, under the insurance policy in his or her own name," and because they acquired their rights under the AHSC policies by assignment.

Appellants argued their claim was covered because, as a result of the merger, BII had acquired by operation of law all of AHSC's rights under the Transit and Midland policies, including "CIGA rights." Appellants relied upon Corporations Code section 1107, subdivision (a) which provides: "Upon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them."

Appellants' theory was that as a result of merger, AHSC "became" BII. It simultaneously transferred to BHC the assets of the former AHSC, including its insurance policies. That transfer, although referred to in the merger documents as an "assignment," did not trigger the statutory exclusion for claims asserted by an assignee. (§ 1063.1, subd. (c)(9)(ii).) First, the transfer accomplished only a distribution of assets among members of the BII corporate family. Second, it did not assign a "matured claim" for CIGA benefits. Instead, BHC obtained the right to access coverage under AHSC insurance policies, should a claim be made against it in the future.

### Contentions on Appeal

Appellants contend the trial court's ruling undermines California's public policy, expressed in Corporations Code section 1107, to allow the surviving corporation in a merger to succeed to all the "rights and property" of the disappearing corporation including so-called "CIGA rights." Appellants assert that because the Guarantee Act does not expressly exclude CIGA coverage for claims asserted by the surviving corporation based on insurance policies owned by the disappearing corporation, they pass by operation of Corporations Code section 1107, subdivision (a).

Appellants claim that because AHSC "became" BII through the merger they are entitled to CIGA benefits. In that transaction, BII acquired by operation of law all of AHSC's interest in the insurance policies, including "CIGA benefits" under the Guarantee Act. (Corp. Code, § 1107, subd. (a).) AHSC was "reconstituted" as BII and then BHC. Appellants contend these transactions are not assignments subject to exclusion under section 1063.1, subdivision (c)(9)(ii) because they transferred rights under insurance policies, not "CIGA rights."

CIGA again contends the term "original claimant" in section 1063.1, subdivision (c)(9)(ii) is synonymous with "original insured" and that appellants are not the original insured under the AHSC policies. Even if AHSC's

right to CIGA benefits survived the merger with BII, the right was lost when BII assigned the policies to BHC. BII lost the right to make a claim against CIGA because it assigned away its entire interest in the AHSC policies.

*"Original Claimant Under the Insurance Policy in His or Her Own Name"*

■ Like the trial court, we conclude that appellants' claim against CIGA is barred because appellants are not the "original claimant[s] under the insurance policy in his or her [or their] own name [or names]" under the AHSC policies. Our inquiry is limited to the question of whether CIGA coverage exists under the Guarantee Act. We need not consider, and do not decide, whether the merger and assignment would affect coverage under the AHSC policies had Transit and Midland remained solvent.

Appellants contend the "original claimant" exclusion does not apply. Instead, appellants contend they are "claimants" under the definition provided in section 1063.1, subdivision (g): A "[c]laimant [is] any insured making a first party claim or any person instituting a liability claim . . . ." Appellants assert that they are the owners of insurance policies that cover losses incurred in the products liability cases. A claim for insurance policy benefits brought by the owner or beneficiary of the policy is a " 'first party' claim." (*Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1443-1444, fn.5 [2 Cal.Rptr.2d 683]; *Zephyr Park v. Superior Court* (1989) 213 Cal.App.3d 833, 834 fn. 2 [262 Cal.Rptr. 106].) Appellants are making such a claim and are therefore "claimants" under section 1063.1, subdivision (g).

Even if appellants come within the definition of a "claimant" pursuant to section 1063.1, subdivision (g), they do not survive the legislative choice that they are not "original claimants" pursuant to section 1063.1, subdivision (c)(9). Appellants are not the "original claimants" under this definition. The policies are not in their names and AHSC, the named insured under the policies, no longer exists.

Appellants contend they have "CIGA rights" because the named insured under the policies includes AHSC's subsidiaries, its associated or affiliated companies, and companies owned and controlled by AHSC "as now or hereafter constituted . . . ." We disagree for two reasons. First, even if appellants would be entitled to benefits under the policies as AHSC "hereafter constituted," that status does not inexorably entitle them to CIGA benefits. CIGA's statutory obligations are not co-extensive with the obligations imposed by contract on insolvent insurers. (*California Ins. Guarantee Assn. v. Superior Court, supra,* 64 Cal.App.4th at pp. 221-222.) The Guarantee Act limits CIGA's liability to claims asserted by an "original claimant

under the insurance policy in his or her own name." (§ 1063.1, subd. (c)(9)(ii).) Neither Transit nor Midland issued a policy to appellants in their own names, and the corporation to which policies were issued no longer exists. CIGA's contention that "original claimant" means "original insured" is the only rational way to read the phrase, "original claimant under the insurance policy in his or her own name." Any other reading of the statute would do violence to the phrase.

Second, appellants do not fall within the class of named insureds under the policies. The policies cover AHSC and certain entities related to it. BII was briefly the parent corporation of AHSC. Parent corporations are not named insureds under the policies. AHSC then merged into BII and disappeared. (Corp. Code, § 1107.) BII assigned the AHSC assets to BHC. Again, BII is the parent corporation of BHC and not a named insured under the policies. For similar reasons, BHC is not a named insured. It received an assignment of AHSC's assets only after AHSC had disappeared by merging into BII. Thus, BHC is not a subsidiary, nor is it owned or controlled by AHSC. It is not an associated or affiliated company of AHSC's because AHSC did not exist when BHC was created. BHC is a new entity, not AHSC as "hereafter constituted."

Appellants contend that, if BHC is not AHSC as "hereafter constituted," then BII is. However, if BII became a named insured under the AHSC policies after the merger, it lost that status when it assigned to BHC both the policies and the potential liability for defective AHSC products. That BII was sued along with BHC does not create coverage for BII under policies it no longer holds. (*General Accident Ins. Co. v. Superior Court* (1997) 55 Cal.App.4th 1444, 1454 [64 Cal.Rptr.2d 781].) Nor does it create a "covered claim" that CIGA is obligated to pay. (§ 1063.1, subd. (c)(1)(i).)

Our result is consistent with *Westoil Terminals Co. v. Harbor Ins. Co.* (1999) 73 Cal.App.4th 634, 639-640 [86 Cal.Rptr.2d 636], which held that a de facto merger passes to the successor entity by operation of law rights under insurance policies held by the predecessor entity. *Westoil* considered only whether a solvent insurance carrier was required to provide coverage and a defense to the successor of its insured following a de facto merger. No CIGA issue was presented. This case involves a de jure merger where the carriers are insolvent.

### Step Transaction

Appellants urge us to apply the step transaction doctrine to treat the merger and assignment as a single transaction that resulted in nothing more

significant than a change in stock ownership and a name change. Based on the " ' "familiar principle that in applying the [tax laws], the substance rather than the form of the transaction is controlling[,]" ' " the step transaction doctrine is used to determine whether a series of transactions ought to be combined into one for tax purposes. (*Shuwa Investments Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1650 [2 Cal.Rptr.2d 783].) This doctrine treats as a single transaction a series of purportedly separate "step" transactions where each step is taken for the purpose of reaching the ultimate result, where the separate steps have no meaning unless the series is completed, or where taking the first step creates a binding commitment to complete the series. (*Id.* at pp. 1650-1652.)

The step transaction doctrine, even if it may be applied in this nontax context, does not assist appellants. Baxter Travenol, the predecessor of BII, could have acquired the assets and operated the business of AHSC without dissolving AHSC or distributing its assets to a newly formed subsidiary corporation. Baxter Travenol was not legally obligated to take these steps, nor were they required for it to obtain the economic benefit of owning AHSC. As a result, the step transaction doctrine does not dictate that these events be treated as a single transaction.

### *Assignee*

■    Section 1063.1, subdivision (c)(9)(ii) also excludes from the definition of covered claims, "any claim asserted by an assignee[.]" Appellants contend their claim is not barred by this exclusion because the assignment through which BHC acquired the policies did not transfer a "matured claim" for CIGA benefits and served only to distribute assets within a single corporate family. We are not persuaded. The Guarantee Act excludes from coverage claims asserted by an assignee. That term is not defined or qualified by the act. It must be read in the context of the entire statute and given the meaning it bears in ordinary usage. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

BHC acquired its interest in AHSC's insurance policies because BII executed a document entitled Assignment and Assumption. This document assigned to BHC the right to claim benefits under the policies. BHC is, therefore, an assignee of rights under the insurance policies. Its claim for CIGA benefits is, therefore, excluded by the plain meaning of the statute. Any other reading of the statute would do violence to the word selected by the Legislature.

Appellants contend that, despite its unqualified language, the statutory exclusion applies only to the assignment of "mature claims" for CIGA benefits, and not to the assignment of the right to make a claim against an insurance policy. This limitation does not appear in the statute and we may not rewrite the statute to include it. "Our office, of course, 'is simply to ascertain and declare' what is in the relevant statutes, 'not to insert what has been omitted, or to omit what has been inserted.' (Code Civ. Proc., § 1858.) We are not authorized to insert qualifying provisions not included, and may not rewrite the statute to conform to an assumed intention which does not appear from its language. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].)" (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 573 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)

The Guarantee Act expressly excludes from the definition of "covered claims" any claim asserted by an assignee. BHC obtained its interest in the AHSC insurance policies by assignment from BII. The trial court correctly ruled that BHC is not entitled to CIGA benefits, because it is an assignee.

### Conclusion

The judgment is affirmed. Costs to respondent.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied December 26, 2000, and appellants' petition for review by the Supreme Court was denied March 14, 2001.