[No. F055842. Fifth Dist. Oct. 5, 2009.]

CATHOLIC HEALTHCARE WEST, Plaintiff, Cross-defendant and Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant, Cross-complainant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.D. and E.

COUNSEL

Hayes Davis Bonino Ellingson McLay & Scott, Mark G. Bonino and Phuong N. Fingerman for Plaintiff, Cross-defendant and Appellant.

Guilford Steiner Sarvas & Carbonara and Alan D. Sarvas for Defendant, Cross-complainant and Respondent.

OPINION

ARDAIZ, P. J.—In 1985, a nurse working at a hospital suffered a back injury in the course of her employment. By September 2004, approximately $1.6 million had been paid on the nurse's workers' compensation claim for wage indemnity, medical care, and vocational rehabilitation. The nurse's employer paid the first $150,000 under the self-insured retention on its excess workers' compensation insurance policy. By the time the retention was exceeded, the insurance company was insolvent and, consequently, the employer continued to pay for the nurse's medical care.

The employer or an affiliate requested the California Insurance Guarantee Association (CIGA) to reimburse it for amounts the insurance company would have paid under the policy had the insurance company remained solvent. The initial claims to CIGA may have been presented by the corporation that employed the nurse. Subsequent claims were presented by an affiliated corporation into which the employer corporation had merged.

This appeal concerns whether the CIGA is statutorily required to pay those claims. The trial court granted CIGA's motion for summary judgment on the ground that the claims were excluded from the definition of "covered claims" that CIGA was obligated to pay.[1] The court relied upon section 1063.1, subdivision (c)(9)(B), which excludes "any claim by any person other than the original claimant under the insurance policy in his or her own name . . . ." (§ 1063.1, subd. (c)(9)(B).)

In the published portion of this opinion we address two issues regarding the interpretation and application of section 1063.1, subdivision (c)(9)(B). First, we conclude that any claims presented by the corporation that employed the nurse were covered claims despite the fact that the corporation changed its name to a name not listed in the insurance policy. Second, we

[1] Insurance Code section 1063.1, subdivision (c) defines "covered claims." For convenience, references to the provisions in section 1063.1 shall use the designations for subdivisions now in effect. All further statutory references will be to the Insurance Code unless otherwise stated.

interpret the phrase "original claimant under the insurance policy in his or her own name" to include the affiliated corporation into which the employer corporation was merged because the merger was an internal restructuring of a family of corporations, and did not expand or otherwise change the ownership or control of the operations, and because the surviving corporation continued the employer corporation's corporate activities as well as its hospital operations. We regard this interpretation as creating a narrow exception to the holding in *Baxter Healthcare Corp. v. California Ins. Guarantee Assn.* (2000) 85 Cal.App.4th 306 [102 Cal.Rptr.2d 87] (*Baxter*) where the court concluded that the surviving corporation of a merger between unaffiliated entities was not an original claimant under an insurance policy in the name of the disappearing corporation. Based on our interpretation of section 1063.1, subdivision (c)(9)(B), we conclude that CIGA's motion for summary judgment should be denied.

In the unpublished portion of this opinion we address whether triable issues of material fact exist regarding equitable estoppel and the equitable defense of laches. We conclude that questions of fact exist concerning the application of these affirmative defenses to CIGA's cross-complaint. These questions of fact are another reason why CIGA should not have been granted summary judgment on its cross-complaint.

The judgment will be reversed and the matter remanded for further proceedings.

## FACTS

*Mercy Hospital Bakersfield*

The accurate identification of the entity named Mercy Hospital Bakersfield is important to the issues raised in this appeal and is complicated by the fact that the entity changed its name twice and was involved in corporate reorganizations. Mercy Hospital Bakersfield was the name of a California nonprofit public benefit corporation until late 1991, when it changed its corporate name to "Mercy Healthcare Bakersfield."[2] In March 1998, the corporation filed an amendment to its articles of incorporation that changed its name to "Catholic Healthcare West Central California." For convenience, we sometimes will refer to the nonprofit public benefit corporation successively named Mercy Hospital Bakersfield, Mercy Healthcare Bakersfield, and Catholic Healthcare West Central California as Hospital Corporation.

---

[2] The corporation's relationship with Catholic Healthcare West was addressed in its restated articles of incorporation. The restated articles indicated that the corporation was a subordinate body of Catholic Healthcare West and stated: "Catholic Healthcare West shall be the sole member of this corporation."

In September 2001, Hospital Corporation's parent corporation, Catholic Healthcare West, reorganized its subsidiary corporations. As part of the reorganization, Hospital Corporation was merged with Catholic Healthcare West North State, another nonprofit public benefit corporation. In the merger, Hospital Corporation was the disappearing corporation and Catholic Healthcare West North State was the surviving corporation. Shortly after the merger, the surviving corporation was renamed Catholic Healthcare West II. In December 2001, Catholic Healthcare West II merged with its parent corporation, Catholic Healthcare West. Catholic Healthcare West II was the surviving nonprofit public benefit corporation and changed its name to Catholic Healthcare West.

*The Insurance Policy and Employee Claim*

Mission Insurance Company issued Specific Excess Workers' Compensation Insurance Policy No. RWS 31293A to Sisters of Mercy Health Systems on January 28, 1985. The policy period was from January 1, 1985, through July 1, 1986. The employer's retention amount for each occurrence was $150,000. Endorsement A1, dated March 20, 1985, changed the name of the employer covered by the policy to "Mercy Health System; St. Joseph's Hospital & Medical Center; Mercy Hospital & Medical Center; St. Mary's Hospital & Medical Center; St. John's Regional Medical Center; and Mercy Hospital, Bakersfield."

On May 30, 1985, Suzanne Bonham injured her back in the course and scope of her employment as a registered nurse at Mercy Hospital Bakersfield. Within 60 days following Bonham's injury, Mercy Hospital Bakersfield began making payments to her in satisfaction of its obligation under the Labor Code to pay workers' compensation benefits.

On August 22, 1985, endorsement A2 to the policy was issued. The endorsement set forth the agreement that the insurance company for the policy was changed from Mission Insurance Company to Mission *American* Insurance Company. (Italics added.) Endorsement A2 became effective on September 1, 1985, at 12:01 a.m.

Two months later, on October 31, 1985, Mission Insurance Company was ordered into conservation by the courts. The attempt to rehabilitate Mission Insurance Company was not successful and it was ordered into liquidation on February 24, 1987.

In December 1987, Self Insurers Service, Inc., a third party administrator for Catholic Healthcare West, the Sisters of Mercy Hospitals and Mercy Hospital Bakersfield sent Mission American Insurance Company a notice of

the potential workers' compensation excess claim regarding Bonham. This notice was followed by supplemental reports in March and June 1988. All three documents estimated the total loss at under $78,000.

In September 1989, International Surplus Adjusting Services (International Surplus) sent a letter to Applied Risk Management, the administrator then handling the Bonham matter for Catholic Healthcare West and its affiliates. The letter stated (1) International Surplus was handling the matter for CIGA, (2) CIGA was assuming the obligation of Mission Insurance Company, (3) Mission Insurance Company had been placed in liquidation by California's Department of Insurance, and (4) Mission Insurance Company recently had been notified that Bonham's claim might exceed the insured's retention. The letter directed Applied Risk Management to send all further correspondence to the undersigned and requested additional information on the status of Bonham's claim.

Applied Risk Management sent International Surplus a report dated November 2, 1989, indicating the status of settlement negotiations with Bonham and estimating the total loss on the claim at approximately $127,000. The report listed the assured as "Sisters of Mercy Health System."

In late 1989, Bonham and Mercy Hospital Bakersfield entered an amended stipulation with request for award and filed it with the Workers' Compensation Appeals Board. The stipulation stated that Bonham's injury caused permanent disability of 31.5 percent and that she might need further medical treatment to cure or relieve the effects of the injury.

Based on the stipulation, the Workers' Compensation Appeals Board issued an award on January 5, 1990, in favor of Bonham and against "Mercy Hospital" that entitled Bonham to both disability indemnity compensation and future medical care.

In August 1990, Applied Risk Management sent International Surplus a report stating $6,685 was left to be paid on the settlement for permanent disability and estimating future medical care at approximately $38,000. The estimate of the total loss on the claim was about $149,000. The report listed the assured as Catholic Healthcare West and Mercy Hospital Bakersfield.

On July 26, 1991, Applied Risk Management sent International Surplus a report stating the permanent disability had been paid in full, estimating future medical care at approximately $34,000, again estimating the total loss on the claim at about $149,000, and listing the assured as Catholic Healthcare West and Mercy Hospital Bakersfield.

Less than two weeks later, CIGA became directly involved. It sent a letter to Applied Risk Management that referenced the Bonham claim and identified

the assured as "Catholic Health Care-West." The letter, dated August 8, 1991, stated in full: "This Association has assumed administration of the Mission excess claim. Do not communicate further with International Surplus. [¶] It appears it will be many, many years before the retention is exceeded, if ever. Therefore, we are closing our file. No further reports will be needed unless the retention is exceeded."

The next communication in the record between Applied Risk Management and CIGA occurred almost seven years later in May 1998 when Applied Risk Management sent a supplemental workers' compensation report to CIGA. The report advised CIGA that Bonham's condition had deteriorated. An implanted neurostimulator and a morphine pump had been tried to reduce her pain. Both failed. Also, each resulted in complications and caused home health care to be provided. Spinal fusion was discussed and Bonham continued with counseling. The total amount paid at that point was $292,589.63 and the future medical care was estimated at $100,000.

Because the amount paid on Bonham's claim exceeded the $150,000 retention amount, CIGA audited the payments made to determine the appropriate reimbursement. In September 1998, CIGA informed Applied Risk Management of the results of its audit, which showed indemnity payments of $72,662.32 and medical care payments of $200,312.89. Based on these figures and the $150,000 retention, CIGA determined a total reimbursement of approximately $123,000 was warranted. CIGA indicated that a completed W-9 form would "allow us to initiate proper reimbursements to the insured in this case" and included the form with its letter.

In November 1998, CIGA made three checks payable to Catholic Healthcare West for the excess workers' compensation liability of Mission Insurance Company on the Bonham claim. The checks covered medical care reimbursement ($90,240.44), expense reimbursement ($2,874.88), and indemnity reimbursement ($32,734.77). On April 5 and 29, 1999, CIGA issued additional reimbursement checks to Catholic Healthcare West. All of the checks listed "Sisters of Mercy Health Serv." as the insured and referenced policy No. RWS 031293. The seven reimbursement checks from CIGA totaled $186,093.51. CIGA made no further payments relating to the Bonham claim.

From 2001 through 2004, Catholic Healthcare West's third party claims administrator continued to send requests for reimbursement to CIGA. The record does not show if CIGA responded to each request, but does establish that the requests were not paid.

In October 2004, CIGA sent a letter to Catholic Healthcare West's third party administrator requesting a copy of the complete excess policy as soon

as was reasonably possible. In November 2004, the administrator provided CIGA a copy of the policy and endorsements A1 and A2.

In July 2005, CIGA advised Catholic Healthcare West that (1) National American Insurance Company of California (NAICC) had purchased the assets and liabilities of Mission American Insurance Company, (2) those liabilities included the liability on the policy covering Bonham's workers' compensation claim, and (3) CIGA was demanding the return of the $186,093.51 it previously paid to Catholic Healthcare West. Catholic Healthcare West did not return the money to CIGA.

## PROCEEDINGS

In March 2007, Catholic Healthcare West filed a complaint against CIGA and NAICC seeking declaratory relief and indemnity of amounts paid in excess of its $150,000 self-insured retention.

Both CIGA and NAICC filed answers that denied liability and asserted various affirmative defenses. In addition, CIGA filed a cross-complaint against Catholic Healthcare West and NAICC seeking the recovery of the $186,093.51 it paid on the Bonham claim. In its first cause of action, CIGA alleged its payments relating to the Bonham claim satisfied obligations of Mission American Insurance Company and NAICC and, therefore, it was entitled to indemnification from them. CIGA's second cause of action alleged the alternate theory that Catholic Healthcare West was obligated to return the $186,093.51 paid because the claims were not "covered claims" within the meaning of section 1063 et seq.

In January 2008, CIGA filed a motion for summary judgment. On June 3, 2008, the trial court issued a minute order granting CIGA's motion for summary judgment on Catholic Healthcare West's first amended complaint. The sole basis for the order was the trial court's conclusion that the claim was excluded from coverage by section 1063.1, subdivision (c)(9)(B), as interpreted by the court in *Baxter, supra*, 85 Cal.App.4th 306.

The trial court also granted CIGA's motion for summary judgment on its cross-complaint for reimbursement.[3] The court concluded the undisputed facts showed that Catholic Healthcare West could not establish the defense of estoppel or laches. In particular, the court stated Catholic Healthcare West

---

[3] CIGA filed a motion for summary judgment against NAICC. NAICC moved for summary judgment against both CIGA and Catholic Healthcare West on the ground the only reasonable interpretation of endorsement A2 of the policy was that Mission American Insurance Company's liability was limited to claims arising after September 1, 1985. The trial court denied these motions and NAICC is not a party to this appeal.

could not show it was ignorant of the true state of the facts, which was an element of estoppel, and it made no showing of prejudice, which was essential for laches.

On July 8, 2008, the trial court filed a judgment that awarded CIGA $186,093.51, plus its costs of suit. Catholic Healthcare West filed a timely notice of appeal.

## DISCUSSION

### I.   *Standard of Review*

Appellate courts independently review a motion for summary judgment using the same legal standards that governed the trial court's determination of the motion. (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1346 [68 Cal.Rptr.3d 177].) Code of Civil Procedure section 437c contains these standards, which courts apply using a three-step analysis. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601 [50 Cal.Rptr.2d 431] (*Brantley*); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

First, a court must identify the issues framed by the allegations in the pleadings. (*Brantley, supra*, 42 Cal.App.4th at p. 1602.) Second, a court must determine whether the moving party has satisfied its initial burden of producing evidence "to make a prima facie showing of the nonexistence of any triable issue of material fact . . . ." (*Aguilar, supra*, 25 Cal.4th at p. 850; see *Brantley, supra*, 42 Cal.App.4th at p. 1602.) Third, if the moving party has made the requisite showing, a court must examine the opposition and determine whether it demonstrates the existence of a triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

A triable issue of fact exists when the evidence reasonably would permit the trier of fact, under the applicable standard of proof, to find the purportedly contested fact in favor of the party opposing the motion. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

### II.   *CIGA's Cross-complaint for Return of the 1998 and 1999 Payments*

#### A.   *Background*

CIGA's cross-complaint for indemnity alleged that (1) CIGA had mistakenly believed that the claims made by or on behalf of Catholic Healthcare West were covered claims for purposes of section 1063.1, (2) the claims were not covered claims and CIGA was not authorized to pay them, and

(3) Catholic Healthcare West was legally obligated to return the $186,093.51 paid by CIGA, but had refused to return the payment as demanded by CIGA.

CIGA's motion for summary judgment asserted, among other things, that the claims it paid were not covered because the statute excludes "any claim by any person other than the original claimant under the insurance policy in his or her own name . . . ." (§ 1063.1, subd. (c)(9)(B).) In *Baxter, supra*, 85 Cal.App.4th 306, the Court of Appeal interpreted this statutory language to mean a claim for coverage must be made by an original insured. (*Id.* at p. 313.)

Catholic Healthcare West contends summary judgment on CIGA's cross-complaint is inappropriate because triable issues of material fact exist regarding (1) what entity or entities made the claims paid by CIGA, (2) whether CIGA is estopped from denying that Catholic Healthcare West was an original insured, and (3) whether the doctrine of laches bars CIGA's cross-complaint.

The trial court reached three conclusions in granting summary judgment to CIGA on its cross-complaint for the return of the $186,093.51. First, CIGA was not authorized to pay the claims because the claims were excluded from the definition of "covered claims" by section 1063.1, subdivision (c)(9)(B). Second, there was no triable issue of fact regarding Catholic Healthcare West's estoppel defense because an essential element had been negated. Third, the evidence did not support Catholic Healthcare West's laches defense because there was no showing of prejudice.

B. *Issues Presented*

Broadly stated, this court must decide whether the $186,093.51 paid by CIGA in 1998 and 1999 was paid on "claim[s] by any person other than the original claimant under the insurance policy in his or her own name" (§ 1063.1, subd. (c)(9)(B)) and thus falls outside the definition of a "covered claim." In other words, were the claims made by a person other than an original insured?

The papers filed in the trial court and the appellate briefs did not address some issues pertinent only to CIGA's cross-complaint, probably because the cross-complaint concerned only a small percentage of the total amount in dispute. To obtain the parties' positions on these issues, this court sent counsel a letter that asked specific questions. Counsel provided written answers shortly before oral argument.

Those questions primarily concerned (1) who acted as the claimant in 1998 and 1999, and (2) if it was Hospital Corporation, what impact did that corporation's earlier name changes have on its eligibility to make a covered claim.

## C.  *Identity of the Claimant*

### 1.  *CIGA's separate statement*

Motions for summary judgment "*shall* include a separate statement setting forth plainly and concisely *all material facts* which the moving party contends are undisputed." (Code Civ. Proc, § 437c, subd. (b)(1), italics added; see Cal. Rules of Court, rule 3.1350.) The facts material to CIGA's theory included the identity of the entity or entities that acted as the claimant in 1998 and 1999. Therefore, the first question in our letter of August 25, 2009, asked counsel: "Does CIGA's separate statement of undisputed facts identify the 'person' or 'persons' that acted as the 'claimant' in 1998 and 1999?"[4] Both sides answered "No."

We agree with the parties' assessment. Consequently, we will not discuss the contents of CIGA's separate statement in detail. Despite this omission of a material fact from CIGA's moving papers, we will not end our analysis here but will proceed to the question whether the evidence presented negates the possibility that a named insured acted as a claimant in 1998 and 1999.

### 2.  *Possibility Hospital Corporation was a claimant*

The second question in our letter of August 25, 2009, asked counsel: "Is it possible that Hospital Corporation was the person (or among the persons) that acted as the claimant in 1998 and 1999?" Both sides answered "Yes."

Our review of the evidence in the record confirms CIGA's concession on this issue. Because of the concession, there is no need to set forth a discussion of that evidence here.

### 3.  *Legal effect of Hospital Corporation's name changes*

In early 1998, Hospital Corporation's name was changed to "Catholic Healthcare West Central California." This name was not listed in endorsement A1 as one of the employers covered by the insurance policy.

---

[4] Our letter advised counsel to be familiar with the definition of "claimant" contained in section 1063.1, subdivision (g) and the definition of "person" contained in section 19.

To clarify the position of the parties regarding the legal effect of Hospital Corporation's name changes, the fifth question in our August 25, 2009, letter to counsel asked: "Do Hospital Corporation's name changes, standing alone, mean that any claim made on its behalf in 1998, 1999 and May 2001 was a 'claim by [a] person other than the original claimant under the insurance policy in his or her own name' for purposes of Insurance Code section 1063.1(c)(9)(B)?"

Both parties answered "No." We agree with the position taken by the parties and conclude that Hospital Corporation's name changes did not change its status as an original insured capable of presenting a covered claim to CIGA. Because CIGA has conceded this question of statutory construction, we need not include an analysis in this opinion.

### 4.  *Summary*

Based on CIGA's answers to the questions asked in this court's letter of August 25, 2009, it follows that CIGA is not entitled to summary judgment on its cross-complaint for the recovery of $186,093.51. Hospital Corporation's name at the time of Bonham's injury was Mercy Hospital Bakersfield and "Mercy Hospital, Bakersfield" is one of the employers listed in endorsement A1 to the insurance policy. Thus, Hospital Corporation is an original insured. If the trier of fact finds that Hospital Corporation presented the claims to CIGA in 1998 and 1999, which CIGA concedes is possible, then those reimbursement claims would not be excluded from coverage by section 1063.1, subdivision (c)(9)(B).

Accordingly, the summary judgment granted to CIGA on its cross-complaint cannot be upheld.

D., E.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### F.  *Summary*

CIGA's cross-complaint for the return of the $186,093.51 it paid in the Bonham matter cannot be resolved by CIGA's motion for summary judgment because triable issues of material fact exist regarding (1) the application of section 1063.1, subdivision (c)(9)(B) and (2) Catholic Healthcare West's affirmative defenses.

---

*See footnote, *ante*, page 15.

First, based on the evidence in the appellate record, a trier of fact reasonably could find that the claims for reimbursement submitted to CIGA in 1998 and 1999 were claims for coverage made by an original insured—specifically, Hospital Corporation.

Second, assuming that the trier of fact finds the claims for reimbursement submitted to CIGA in 1998 and 1999 were not made on behalf of a named insured, questions of material fact exist regarding Catholic Healthcare West's affirmative defenses of laches and equitable estoppel.

III.   *Catholic Healthcare West's Reimbursement Claim*

   A.   *Legal Effect of the Mergers*

      1.   *Facts regarding the mergers*

In 2001, Catholic Healthcare West oversaw and coordinated the operations of a health care system that was organized into three tiers of nonprofit public benefit corporations. The top tier consisted solely of Catholic Healthcare West, the parent corporation. The middle tier consisted of multiple regional subsidiary corporations of which Catholic Healthcare West served as the sole member.[9] The bottom tier consisted of the corporations that operated the hospitals within a particular region; the regional corporation acted as the sole member of these corporations.[10]

In September 2001, Catholic Healthcare West reorganized the corporate structure and management of the health care system. Hospital Corporation, then named Catholic Healthcare West Central California, merged with Catholic Healthcare West North State, another subsidiary of Catholic Healthcare West. The merger documents described Hospital Corporation as the "disappearing corporation" and Catholic Healthcare West North State as the "surviving corporation." Shortly after the merger, the surviving corporation was renamed Catholic Healthcare West II.

---

[9] Nonprofit public benefit corporations do not have shareholders. (See Corp. Code, § 911, subd. (b) [corporation converting to a nonprofit public benefit corporation must amend its articles to delete the authorization of shares].) Instead, they may (but are not required to) have members who are entitled to vote in the election of a director, amend the articles of incorporation, and approve major corporate changes. (Corp. Code, § 5056.)

Our decision in *Faughn v. Perez* (2006) 145 Cal.App.4th 592 [51 Cal.Rptr.3d 692] discussed the structure and operations of Catholic Healthcare West and stated it and its subsidiaries owned approximately 40 hospitals and health care facilities in California, Nevada and Arizona. (*Id.* at p. 596.)

[10] Some of the system's services were provided through entities that had entered into contracts with a regional or a local subsidiary corporation. (See, e.g., *UAS Management, Inc. v. Mater Misericordiae Hospital* (2008) 169 Cal.App.4th 357 [87 Cal.Rptr.3d 81].)

In December 2001, Catholic Healthcare West II merged with its parent corporation, Catholic Healthcare West. Catholic Healthcare West II was the surviving corporation and changed its name to Catholic Healthcare West.

As a result of these mergers and name changes, the entity now named Catholic Healthcare West is the corporation into which Hospital Corporation merged in 2001.

Pursuant to Corporations Code section 6020,[11] Catholic Healthcare West succeeded to all the rights of Hospital Corporation and is subject to all of Hospital Corporation's debts and liabilities. Thus, insofar as California's corporate law is concerned, Catholic Healthcare West is responsible for the workers' compensation benefits owed to Bonham and holds all of Hospital Corporation's rights under policy No. RWS 31293A issued by Mission Insurance Company.

### 2. *Contentions of the parties and issue presented*

CIGA contends that the trial court correctly determined that the corporate entity named Catholic Healthcare West could not make a "covered claim" because it was a "person other than the original claimant under the insurance policy in his or her own name . . . ." (§ 1063.1, subd. (c)(9)(B).) CIGA also contends that *Baxter, supra,* 85 Cal.App.4th 306 supports the conclusion that Catholic Healthcare West, as the surviving corporation of the mergers, is a separate legal entity and cannot be regarded as Mercy Hospital Bakersfield, a named insured.

Catholic Healthcare West contends that the mergers should not bar it from asserting a claim because, among other things, (1) it is still operating Mercy Hospital Bakersfield at the same location where Bonham was injured, (2) it is the entity liable to Bonham on her workers' compensation claim, and (3) it is the entity that emerged from an internal corporate restructuring and is not a completely new corporate entity like the entities whose claims were rejected in *Baxter.*

The parties' contentions frame the following issue: Is Catholic Healthcare West "the original claimant under the insurance policy in his or her own name" for purposes of section 1063.1, subdivision (c)(9)(B) as a result of the 2001 corporate reorganization?

---

[11] When a merger of nonprofit public benefit corporations becomes effective, "the separate existences of the disappearing parties to the merger cease and the surviving party to the merger shall succeed, without other transfer, to all the rights and property of each of the disappearing parties to the merger and shall be subject to all the debts and liabilities of each . . . ." (Corp. Code, § 6020, subd. (a).)

### 3. *Baxter*

In *Baxter*, two affiliated corporations, Baxter Healthcare Corporation (BHC) and Baxter International, Inc. (BII), sued CIGA seeking a judicial declaration that certain product liability claims against them should be covered by CIGA. (*Baxter, supra*, 85 Cal.App.4th at p. 309.) CIGA filed a motion for summary judgment contending the claims of BHC and BII were not covered claims because the corporations were not "the original claimant under the insurance policy in his or her own name" for purposes of section 1063.1, subdivision (c)(9)(B). (*Baxter, supra*, 85 Cal.App.4th at p. 310.) The trial court agreed and granted the motion for summary judgment. (*Ibid.*) The Court of Appeal affirmed. (*Id.* at p. 315.)

In 1984, American Hospital Supply Company (AHSC) sold its breast implant business and retained responsibility for product liability claims from products it sold before the closing. (*Baxter, supra*, 85 Cal.App.4th at p. 309.) Later in 1984, Baxter Travenol Laboratories, Inc. (BTLab), acquired all of AHSC's stock. BTLab then merged with AHSC—BTLab being the surviving corporation after the merger. (*Ibid.*) Effective on the same day as the merger, BTLab assigned substantially all of the assets formerly owned by AHSC to Baxter Acquisition Sub., Inc. (BASI), and changed BASI's name to American Hospital Supply Corporation (AHSCorp). (*Ibid.*)

In 1986, AHSCorp merged into Travenol Laboratories, Inc., which then changed its name to BHC (this corporation is one of the plaintiffs in the coverage action). In 1987, BTLab changed its name to BII (this corporation is the other plaintiff). (*Baxter, supra*, 85 Cal.App.4th at p. 309.)

As a result of acquiring AHSC, BII and BHC were named as defendants in thousands of product liability lawsuits concerning breast implants. BII and BHC filed suit against the insurance companies that sold excess liability insurance policies to AHSC during the period in which the implants were manufactured and sold. Because the insurance companies had become insolvent, BII and BHC joined CIGA in their place. (*Baxter, supra*, 85 Cal.App.4th at p. 309.)

In *Baxter*, the parties disputed whether BII and BHC qualified as an "original claimant under the insurance policy in his or her own name" for purposes of section 1063.1, subdivision (c)(9)(B). The plaintiffs argued that (1) AHSC, a named insured, became BII through the merger and (2) AHSC was reconstituted as BII and then BHC. (*Baxter, supra*, 85 Cal.App.4th at p. 311.) The Court of Appeal rejected these arguments and concluded BII and BHC did not qualify because "[t]he policies are not in their names and AHSC, the named insured under the policies, no longer exists." (*Id.* at

p. 312.) The court concluded that the statutory phrase in dispute must be read to mean "original insured" and that any other reading would do violence to the phrase. (*Id.* at p. 313.)

The court noted that BII briefly was the parent corporation of AHSC, but stated that the parent corporation was not a named insured. (*Baxter, supra,* 85 Cal.App.4th at p. 313.) In addition, the court concluded that BHC was not AHSC as " 'hereafter constituted' " because AHSC no longer existed in 1986 when BHC was created. (*Ibid.*)

In this case, CIGA argues that the decision in *Baxter* compels the conclusion that Catholic Healthcare West is not an "original claimant under the insurance policy in his or her own name" for purposes of section 1063.1, subdivision (c)(9)(B) because it is a separate legal entity and Hospital Corporation no longer exists.[12] In contrast, Catholic Healthcare West contends that *Baxter* is distinguishable.

### 4. *Analysis*

There are a number of factual differences between this case and *Baxter*.[13] (*Baxter, supra,* 85 Cal.App.4th at p. 306.) We regard two such differences as sufficient to warrant a different result from the one reached in *Baxter.*

First, in this case, the corporations that merged were part of the same family of corporations. The mergers merely restructured an existing group of corporations that were under the control of a single parent corporation. As such, the mergers were not part of a transaction that changed the control or ownership of the operations conducted by the corporate family. In contrast, AHSC (the named insured) was an independent corporation that was purchased by BII (under an earlier name) and then merged into BII. Thus, the

---

[12] CIGA's undisputed material fact No. 8 asserts: "Catholic Healthcare West is not an original claimant under . . . Policy No. RWS 31293A." Catholic Healthcare West responded to this assertion of fact by stating: "Disputed—objection, irrelevant." Contrary to the requirements of California Rules of Court, rule 3.1350(f), this response did not describe the evidence that demonstrated a factual dispute. This omission, however, was addressed later in Catholic Healthcare West's response to CIGA's separate statement of undisputed facts where it asserted it was an "original claimant" pursuant to section 1063.1, subdivision (c)(9) and referenced certain corporate documents. (See *Butcher v. Gay* (1994) 29 Cal.App.4th 388, 399 [34 Cal.Rptr.2d 771] [papers of party opposing summary judgment are liberally construed].)

[13] The differences not discussed below include the fact that (1) the corporations involved in this case are all nonprofit public benefit corporations while the corporations in *Baxter* were operated for a profit, (2) the insurance policy in this case covers workers' compensation liability while *Baxter* involved a general liability insurance policy, and (3) Bonham's injury occurred and her employer's responsibility for her medical expenses was established before the merger in which her employer (Hospital Corporation) disappeared.

merger in *Baxter* was part of a transaction in which an unaffiliated (i.e., independent) business acquired ownership of the named insured.

Second, the surviving corporation in this case continues to operate the business that generated the underlying liability. Specifically, Catholic Healthcare West continues to operate the hospital where Bonham was employed when she was injured. In *Baxter*, AHSC's breast-implant business was not acquired by BII.

Based on these facts and the legislative purpose discussed below, we conclude that Catholic Healthcare West is the equivalent of one of the original insureds—the corporation once named Mercy Hospital Bakersfield.

■     Under the rules of statutory construction, this court must interpret the phrase "original claimant under the insurance policy in his or her own name" in a manner that comports most closely with the legislative intent and promotes, rather than defeats, the general purpose of the statute. (*Azadozy v. Nikoghosian* (2005) 128 Cal.App.4th 1369, 1373 [27 Cal.Rptr.3d 811] [courts must ascertain legislative intent and effectuate statute's purpose].) Neither party has referenced, nor have we located, any legislative materials that indicate a particular purpose or intent regarding organizational restructuring of an insured. In the absence of information concerning a particular legislative intent or purpose, we turn to the general purpose of the statute. (*Ibid.* [courts select statutory construction that comports most closely with legislative intent and promotes, rather than defeats, the general purpose of the statute].)

■     A number of cases recognize that CIGA "was created to provide a limited form of protection for insureds and the public, not to provide a fund to protect insurance carriers." (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (1992) 10 Cal.App.4th 988, 994 [12 Cal.Rptr.2d 848].) In light of this statutory purpose, it appears that the phrase "original claimant under the insurance policy in his or her own name" was included in the statute to limit CIGA's liability to those individuals or entities that were named in the policy as well as members of the public injured by a named insured.

Consequently, the statute was intended to protect Mercy Hospital Bakersfield, the entity that purchased the insurance, and Bonham, the member of the public to whom Mercy Hospital Bakersfield owed an obligation that was insured. Furthermore, we conclude that the purpose of the statute is promoted, rather than defeated, by providing protection to Catholic Healthcare West in the circumstances of this case.

■ First, Catholic Healthcare West is the *continuation* of the named insured, Mercy Hospital Bakersfield, with respect to its fundamental components of (1) corporate activities, (2) operations and (3) ownership. If one conceptualizes the "insured" in terms of these component parts and applies an economic reality test, it follows that Catholic Healthcare West is the equivalent of the original insured because it is the continuation of all three components. For instance, under a merger "the *corporate activities* of the constituent corporations do not cease but are *continued and carried on* through the new channel of the surviving corporation." (15 Cal.Jur.3d (2009) Corporations, § 422, p. 638, italics added.) Thus, Catholic Healthcare West is the organizational entity that is continuing the corporate activities of Hospital Corporation. In addition, Catholic Healthcare West continues to operate the facility known as Mercy Hospital Bakersfield. Thus, it is continuing the enterprise that was protected by Hospital Corporation's insurance policy. Furthermore, the ultimate ownership of both the corporate activities and the actual operations was not changed by the mergers. The corporate restructuring conducted within the Catholic Healthcare West family of corporations did not result in a previously independent economic actor obtaining an ownership interest in the overall enterprise or in the operations of the facility where Bonham was injured.

Thus, in the circumstances of this case, treating Catholic Healthcare West as a covered claimant does not expand CIGA's protection beyond the scope intended by the Legislature. The interests that were protected before the 2001 mergers are the same interests that are protected by allowing Catholic Healthcare West to present claims as a continuation of an "original claimant." CIGA's funds will not go to someone liable in the Bonham matter but unprotected before the 2001 corporate reorganization. Also, CIGA's funds will not benefit an unaffiliated party that had independent economic interests before the reorganization. Therefore, the economic reality of a statutory interpretation that allows Catholic Healthcare West to act as a covered claimant is that CIGA's protection is essentially the same as if the corporate reorganization had not occurred—both in terms of the dollar amount of liability and in terms of the owners and underlying interests protected.

Second, providing protection to Catholic Healthcare West indirectly protects Bonham. She is among the class of persons the Legislature intended to protect. Although Bonham may have little risk in this case because of Catholic Healthcare West's financial resources, our interpretation of the statute may affect employees whose employers are less financially stable and have undergone an internal corporate restructuring.

Lastly, CIGA has not identified any public policy or legislative purpose that would be promoted by denying coverage in this case.

█ Accordingly, we interpret the phrase "original claimant under the insurance policy in his or her own name" to include Catholic Healthcare West because it is the continuation of an original insured. Specifically, (1) Catholic Healthcare West is the entity continuing Mercy Hospital Bakersfield's corporate activities, (2) it is continuing Mercy Hospital Bakersfield's actual operations, and (3) the 2001 mergers merely reorganized the structure of a family of corporations and did not expand or otherwise change the ownership of the operations. Based on these factors, *Baxter* is distinguishable. We regard this decision as creating a narrow exception to the principles established by *Baxter*. (*Baxter, supra*, 85 Cal.App.4th at p. 306.)

### 5. *Assignee*

CIGA also contends that Catholic Healthcare West is an assignee of an original insured and thus excluded from coverage by the language in section 1063.1, subdivision (c)(9) that states a covered claim "does not include any claim asserted by an assignee . . . ." In *Baxter*, the court concluded that BHC was an assignee because substantially all of the assets of AHSC were transferred to a predecessor corporation pursuant to a document titled "Assignment and Assumption." (*Baxter, supra*, 85 Cal.App.4th at p. 309.) In this case, the record does not contain an assignment document. Furthermore, we will not interpret the word "assignee" so broadly as to include the surviving corporation of the mergers that occurred in this case. Doing so would defeat, rather than promote, the legislative purpose of the statute.

### 6. *Conclusion*

Based on the foregoing interpretation of section 1063.1, subdivision (c)(9)(B), CIGA is not entitled to summary judgment on Catholic Healthcare West's cause of action against CIGA for reimbursement.

### B. *Issues Not Addressed*

Based on our interpretation of section 1063.1, subdivision (c)(9)(B), we need not reach the issues involving laches and equitable estoppel as they relate to Catholic Healthcare West's complaint. Also, we do not address whether the definition of a covered claim contained in section 1063.1, subdivision (c)(13) is subject to the exclusion contained in section 1063.1, subdivision (c)(9)(B) or whether workers' compensation insurance should be a separate exception to the principles established in *Baxter*. (*Baxter, supra*, 85 Cal.App.4th at p. 306.)

### DISPOSITION

The judgment in favor of CIGA and against Catholic Healthcare West is reversed. The matter is remanded to the trial court for further proceedings and

with directions to (1) vacate its June 2008 order granting CIGA's motions for summary judgment on CIGA's cross-complaint and on Catholic Healthcare West's complaint and (2) enter an order denying the motions. Catholic Healthcare West shall recover its costs on appeal.

Cornell, J., and Kane, J., concurred.